# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| SERVANDO PARAON CALICDAN,<br><br>*Plaintiff*<br><br>v.<br><br>M D NIGERIA, LLC; MEGADRILL SERVICES LIMITED; ANJALEX INVESTMENTS, LLC; M & D MANAGEMENT, LLC; MICHAEL A. TOPHAM; WENDY DUNN, DAN TOPHAM, IAN DUNN, JUDY M. DUNN, and ROBERT P. DUNN,<br><br>*Defendants* | CIVIL ACTION NO. 21-cv-3283<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Servando Paraon Calicdan ("Plaintiff" or "Ms. Calicdan"), on her own behalf and on behalf of those similarly situated (at times hereinafter referred to collectively as "Plaintiffs"), allege as follows:

### I. PRELIMINARY STATEMENT

1. Mr. Calicdan, a skilled welder, worked for the M D Nigeria, LLC; Megadrill Services, Ltd; Anjalex Investments, LLC; M & D Management, LLC; Wendy Dunn; and Robert P. Dunn (collectively, "Defendants") in Lafayette, Louisiana from April 2019 until February 2020.

2. Mr. Calicdan and other similarly-situated workers routinely worked approximately 64 hours per week, but Defendants did not pay them the required minimum wage and overtime wage required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 and 207.

## II.     JURISDICTION AND VENUE

3.     This action alleges the violation of rights under the Fair Labor Standards Act (hereafter "FLSA"). Thus, the predominant action herein gives rise to the jurisdiction in this Court pursuant to 28 U.S.C. §1331.

4.     The Court has personal jurisdiction over Defendants since they regularly conduct business in the State of Louisiana, and therefore have minimum contacts with the State of Louisiana.

5.     Venue lies in this Court over these claims pursuant to 28 U.S.C. § 1391(b) and (c) as a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Louisiana.

## III.     PARTIES

### A.     Plaintiffs

6.     Mr. Calicdan is a resident of Florida who worked for Defendants from April 2019 until February 2020.  While Mr. Calicdan worked for Defendants, he was a resident of the State of Louisiana.

7.     Mr. Calicdan performed his job duties for Defendants entirely in the Western District of Louisiana.

8.     Named Plaintiff, Mr. Calicdan, is one of approximately 19 nationals of the Philippines who worked for the Defendants with B-1 visas as welders, fitters, painters/riggers/blasters, cooks, mechanics, and housekeepers/laundrymen in the Western District of Louisiana. Like Mr. Calicdan, the other welders worked at Defendants' Cameron Parrish, Louisiana shipyard under the same or similar wage payment scheme, which resulted in minimum wage and overtime violations for underpayments and/or failure to pay overtime.

9. Pursuant to 29 U.S.C. § 216(b), and as set forth in detail below, Mr. Calicdan seeks to assert his claims individually and on behalf of all of those similarly situated, who (1) are currently employed by Defendants and/or who have been employed by Defendants any time in the last three years, and (2) are Philippine nationals who were present in the United States and employed by the Defendants with B-1 visas.

10. Mr. Calicdan's written consent to join this FLSA collective action is attached as Exhibit A to this Complaint.

**B.  Defendants**

11. Defendant MD Nigeria, LLC ("MD Nigeria") is a Louisiana Limited Liability Company domiciled in Lafayette, Louisiana and headquartered at 113 Beau Pre Road, Lafayette, LA 70508, in the Western District of Louisiana. MD Nigeria maintains and repairs sea-going vessels out of a yard it operates in Cameron Parrish, Louisiana. According to Louisiana Secretary of State records, Robert P. Dunn remains the Registered Agent for MD Nigeria, though, upon information and belief, he passed away in November 2019.

12. Defendant Megadrill Services Limited ("Megadrill Services") is a foreign corporation incorporated under the laws of the British Virgin Islands. Upon information and belief, Megadrill Services regularly conducts business at MD Nigeria's office in Lafayette, Louisiana and at the yard MD Nigeria operates in Cameron Parrish, Louisiana. According to Mr. Calicdan's Contract of Employment, Megadrill Services' address is 113 Beau Pre Road, Lafayette, LA 70508.

13. Ajalex Investments, LLC ("Anjalex") is a Louisiana Limited Liability Company domiciled in Lafayette, Louisiana, and headquartered at 200 Baltusrol Drive, Broussard, LA 70518, with a mailing address of 113 Beau Pre Road, Lafayette, LA 70508, in the Western District of Louisiana. According to Louisiana Secretary of State Records, (a) Anjalex is one of two

managers of MD Nigeria; (b) Robert P. Dunn remains the Registered Agent for and one of two members of Ajalex, though, upon information and belief, Mr. Dunn passed away in November 2019; and (c) Judy M. Dunn is the second member of Anjalex.

14. Defendant M & D Management, LLC ("M&D Management") is a Louisiana Limited Liability Company domiciled in Lafayette, Louisiana and headquartered at 509 Huntley Avenue, Lafayette, LA 70508, in the Western District of Louisiana. According to Louisiana Secretary of State Records, (a) M&D Management is one of two managers of MD Nigeria and (b) Michael Topham is the Registered Agent and sole member of M&D Management.

15. Upon information and belief, Defendant Michael A. Topham ("Mr. M. Topham") is a resident of Lafayette, Louisiana and may be served at 509 Huntley Avenue, Lafayette, LA 70508. Mr. M. Topham is the registered agent and sole member of M&D Management, which in turn is one of two managers of MD Nigeria. On his LinkedIn site, Mr. M. Topham identifies himself as "President of Megadrill Services." Further, Mr. M. Topham is identified as MegaDrill's corporate "representative" and "principal" in at least one lawsuit[1] and MegaDrill's "co-owner" in another.[2]

16. Upon information and belief, Mr. M. Topham exercised control of Plaintiff's and other similarly situated workers' work, directly or indirectly.

17. Upon information and belief, Mr. M. Topham had the power to establish, and did establish, Plaintiff's and other similarly situated workers' terms of employment.

18. Upon information and belief, Mr. M. Topham had the power to hire and fire Plaintiff and other similarly situated workers.

---

[1] *See Megadrill Services Limited v. Brighouse*, 556 S.W.3d 490, 497 & 499 (Tex. App. 2018).
[2] *See Dunn v. Admiralty Marine and Structural Engineering, Inc.*, No. CV H-12-03643, 2015 WL 12778390, at *1 (S.D. Tex. Oct. 13, 2015).

19. Upon information and belief, Mr. M. Topham exercised operational control over significant aspects of the day-to-day functions of MD Nigeria, Megadrill Services, and M&D Management. This included managing, supervising, and directing the business and operations of these entities.

20. Upon information and belief, Defendant Judy M. Dunn ("Ms. J. Dunn") is a resident of Lafayette, Louisiana and may be served at 113 Beau Pre Road, Lafayette, Louisiana 70508. Upon information and belief, Ms. J. Dunn is the sole surviving member of Defendant Anjalex, which is a manager of Defendant MD Nigeria.

21. Upon information and belief, Ms. J. Dunn exercised control of Plaintiff's and other similarly situated workers' work, directly or indirectly.

22. Upon information and belief, Ms. J. Dunn had the power to establish, and did establish, Plaintiff's and other similarly situated workers' terms of employment.

23. Upon information and belief, Ms. J. Dunn exercised operational control over significant aspects of the day-to-day functions of MD Nigeria and Megadrill Services. This included managing, supervising, and directing the business and operations of these entities.

24. Upon information and belief, Defendant Wendy Dunn ("Ms. W. Dunn") is a resident of Lafayette, Louisiana and may be served at 113 Beau Pre Road, Lafayette, Louisiana 70508. According to Ms. W. Dunn's LinkedIn page, she is Vice President at MegaDrill Services.

25. Upon information and belief, Ms. W. Dunn exercised control of Plaintiff's and other similarly situated workers' work, directly or indirectly.

26. Upon information and belief, Ms. W. Dunn had the power to establish, and did establish, Plaintiff's and other similarly situated workers' terms of employment.

27. Upon information and belief, Ms. W. Dunn had the power to hire and fire Plaintiff and other similarly situated workers.

28. Upon information and belief, Ms. W. Dunn exercised operational control over significant aspects of the day-to-day functions of MD Nigeria and Megadrill Services. This included managing, supervising, and directing the business and operations of these entities.

29. Upon information and belief, Robert P. Dunn ("Mr. R. Dunn") was a resident of Lafayette, Louisiana until he passed away on or about November 5, 2019.

30. Upon information and belief, Mr. R. Dunn exercised control of Plaintiff's and other similarly situated workers' work, directly or indirectly.

31. Upon information and belief, Mr. R. Dunn had the power to establish, and did establish, Plaintiff's and other similarly situated workers' terms of employment.

32. Upon information and belief, Mr. R. Dunn had the power to hire and fire Plaintiff and other similarly situated workers.

33. Upon information and belief, Mr. R. Dunn exercised operational control over significant aspects of the day-to-day functions of MD Nigeria and Megadrill Services. This included managing, supervising, and directing the business and operations of these entities.

34. Upon information and belief, Dan Topham ("Mr. D. Topham") is a resident of Berwick, Louisiana and may be served at 201 Palmer Street, Berwick, LA 70342.

35. At all relevant times, Mr. D. Topham was a supervisor at MD Nigeria and MegaDrill Services.

36. Upon information and belief, Mr. D. Topham exercised control of Plaintiff's and other similarly situated workers' work, directly or indirectly.

37. Upon information and belief, Mr. D. Topham had the power to establish, and did establish, Plaintiff's and other similarly situated workers' terms of employment.

38. Upon information and belief, Mr. D. Topham had the power to hire and fire Plaintiff and other similarly situated workers.

39. Upon information and belief, Mr. D. Topham exercised operational control over significant aspects of the day-to-day functions of MD Nigeria and Megadrill Services. This included managing, supervising, and directing the business and operations of these entities.

40. Upon information and belief, Ian Dunn ("Mr. I. Dunn") is a resident of Broussard, Louisiana and may be served at 200 Baltusrol Drive, Broussard, LA 70518.

41. At all relevant times, Mr. I. Dunn was a supervisor at MD Nigeria and Megadrill Services.

42. Upon information and belief, Mr. I. Dunn exercised control of Plaintiff's and other similarly situated workers' work, directly or indirectly.

43. Upon information and belief, Mr. I. Dunn had the power to establish, and did establish, Plaintiff's and other similarly situated workers' terms of employment.

44. Upon information and belief, Mr. I. Dunn had the power to hire and fire Plaintiff and other similarly situated workers.

45. Upon information and belief, Mr. I. Dunn exercised operational control over significant aspects of the day-to-day functions of MD Nigeria and Megadrill Services. This included managing, supervising, and directing the business and operations of these entities.

46. At all relevant times, Defendants were "employers" of Plaintiff and other similarly situated workers within the meaning of the FLSA.

47. At all times relevant, Plaintiff and other similarly situated workers were individual employees engaged in performing activities within the meaning of 29 U.S.C. § 203(r) as required by 29 U.S.C. §§ 206, 207.

48. At all relevant times, Defendants "employed" Plaintiff and other similarly situated workers within the meaning of the FLSA.

49. At all relevant times, Plaintiff and other similarly situated workers were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b) and (j). Defendants' business involves the maintenance and repair of sea-going vessels out of a yard it operates in Cameron Parrish, Louisiana.

50. At all times relevant to this Complaint, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s), in that Defendants operate an enterprise that has employees engaged in commerce or production of goods for commerce and that has annual gross revenues that exceed $500,000.00. 29 U.S.C. § 203(s)(1)(A).

### IV.   FACTUAL BACKGROUND

51. According to Plaintiff's employment contract, Defendants paid Plaintiff "basic pay" of $837.00 per month. However, he did not receive this money "free and clear."

52. According to Plaintiff's employment contract, Defendants paid Plaintiff "leave pay" in the amount of $279.00 per month. However, he did not receive this money "free and clear."

53. According to Plaintiff's employment contract, Defendants paid Plaintiff a "service incentive" in the amount of $702 per month. However, he did not receive this money "free and clear."

54. Therefore, as set forth in paragraphs 51-53, *supra*, Plaintiff's employment contract indicates he was paid non-overtime wages of $1,818 per month.

55. Plaintiff regularly worked approximately 64 hours per week.

56. Defendants did not pay Plaintiff his wages "free and clear" as required by the FLSA. 29 C.F.R. § 531.32. Rather, Defendants paid Plaintiff $500 in cash each month. Based on this cash payment, which constituted the only wages Plaintiff received "free and clear," Plaintiff's hourly wage rate based on a 64-hour workweek was $1.95 per hour. If a portion of these wages was considered time-and-a-half overtime, his regular rate of pay would be even lower.

57. Instead of remitting all remaining wages to Plaintiff, Defendants paid the remainder of Plaintiff's wages to Jebsens Maritime, Inc. ("Jebsens"), a labor broker Defendants conduct business with in the Philippines. Jebsens in turn took substantial deductions out of the Plaintiff's wages and paid the balance to Plaintiff's wife in the Philippines.

58. For example, in May 2019, according to a wage statement Jebsens provided to Plaintiff, Jebsens received an "allotment" of 43,389.45 Philippine pesos (approximately 837 U.S. dollars) for Plaintiff's wages. From this "allotment," Jebsens deducted 38,965.17 Philippine pesos (approximately 751 U.S. dollars) for "SSS", "PAGIBIG", "Phihealth", "Sterling Bank – Loan", and "First Maritime Credit Corporation." Upon information and belief, Jebsens then deposited the remaining amount—approximately the equivalent of 86 U.S. dollars—into a bank account in the name of Felicita Calicdan, Plaintiff's wife.

59. Therefore, including the amount deposited in Ms. Calicdan's account—which itself was not wages paid to Plaintiff "free and clear"—Plaintiff was paid approximately 586 U.S. dollars for his work in May 2019. He worked approximately 256 hours that month. Therefore, his regular

9

wage rate was 2.29 U.S. dollars per hour; far below the federal minimum wage. If a portion of these wages was considered time-and-a-half overtime, his regular rate of pay would be even lower.

60. If Plaintiff had received his wages "free and clear," his hourly wage rate would have been approximately $7.10 per hour based on a 64-hour workweek.

61. Therefore, based on a 64-hour workweek, and if Defendant had paid Plaintiff his wages "free and clear," Plaintiff's wages would have been below the FLSA-mandated minimum wage of $7.25 per hour.

62. According to Plaintiff's employment contract, Defendant was to pay Plaintiff $466 per month in "guaranteed overtime" and $455 per month in "excess OT," for a total of $921 per month.

63. Therefore, the overtime rate Defendant was to pay Plaintiff was $9.59 per hour based on 24 hours of overtime per week (though Plaintiff did not receive these wages "free and clear"). This was not equal to time and one-half Plaintiff's regular rate of pay, which itself was below the minimum wage.

64. Based on the minimum wage of $7.25 per hour, Plaintiff's time-and-a-half overtime rate should have been $10.87 per hour.

65. Alternatively, if Plaintiff's non-overtime wages of $1,818 per month were intended to compensate 40 hours of work, Plaintiff's overtime rate should have been $17.04 per hour.

66. Therefore, Defendants' overtime premium shortfall was either $1.28 per overtime hour or $7.45 per overtime hour.

FLSA COLLECTIVE ACTION ALLEGATIONS

67. Plaintiff brings his FLSA claims on behalf of himself and those individuals who may opt into this action pursuant to 29 U.S.C. § 216(b) and who were not paid required wages at

the Defendants' operations between September 13, 2018 and the date of preliminary approval of the opt-in class.

68. Plaintiff and other workers were subject to the same policies and practices of the Defendants.

69. Plaintiff and other workers worked, primarily performing manual labor, at Defendants' operations in Cameron Parrish, Louisiana.

70. Plaintiff and other workers were nationals of the Philippines employed at Defendants' operations with B-1 visas having an "OCS" (outer continental shelf) designation.

71. Common proof applicable to Plaintiff and the other workers in this location will show that Defendants failed to properly pay wages to Plaintiff and other similarly situated workers.

72. Plaintiff is currently unaware of the identities of all of the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from Defendants' records. Defendants therefore should be required to provide Plaintiff with a list—including last known addresses, telephone numbers, and email addresses—of all individuals who (1) were Philippine nationals with B-1 visas and (2) were employed at Defendants' Louisiana shipyard between September 13, 2018 and the present.

### V.     CAUSES OF ACTION

#### COUNT 1
**VIOLATIONS OF THE FLSA**

73. Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

74. Defendants willfully and intentionally failed to pay the minimum wage to Plaintiff, and to other similarly situated workers who opt into this action, for every hour they worked between September 13, 2018 and the present.

75. Defendants' failure to pay the minimum wage violates the Fair Labor Standards Act, 29 U.S.C. § 206(a) and its implementing regulations.

76. Defendants also willfully and intentionally failed to pay Plaintiff and other similarly situated workers who opt into this action overtime at a rate of at least one-and-a-half times the legally required wage for every hour they worked above 40 hours in a workweek between September 13, 2018 and the present.

77. Defendants' failure to pay overtime premiums violates the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

78. Further, Section 211 of the FLSA further requires employers to keep accurate records of data related to their employees' "wages, hours, and other conditions and practice of employment." 29 U.S.C. § 211(a), (c).

79. Upon information and belief, Defendants failed and/or refused to document the hours Plaintiff worked each workweek, Plaintiff's total overtime earnings for the work week, and all additions to or deductions from Plaintiff's wages.

80. Plaintiff and other similarly situated workers who opt into this action are therefore entitled to their unpaid minimum wages and overtime premiums, plus an equal amount in liquidated damages, as a consequence of Defendants' unlawful acts and omissions, in accordance with 29 U.S.C. § 216(b).

## VI. DEMAND FOR TRIAL BY JURY

81. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by this Complaint.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, and those similarly situated, pray that this Court enter and Order:

a. assuming jurisdiction over this action;

b. declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing Plaintiffs to provide notice of this action to potential opt-in plaintiffs, and allowing those eligible similarly situated workers who choose to do so to opt-in to this action;

c. declaring that the Defendants violated the FLSA;

d. permanently enjoining Defendants from further violations of the FLSA;

e. granting judgment to Plaintiff, and to other similarly situated workers who opt in pursuant to 29 U.S.C. § 216(b), on their FLSA claims and awarding each of them their unpaid minimum wages and overtime premiums plus an equal amount in liquidated damages;

f. awarding prejudgment and postjudgment interest as allowed by law;

g. awarding Plaintiff and other similarly situated workers their costs and reasonable attorneys' fees; and

h. granting such further relief as this Court finds just.

Respectfully submitted this 13th day of September, 2021,

       /s/ Kenneth C. Bordes
**Kenneth C. Bordes (Bar #35668)**
**KENNETH C. BORDES,**
**ATTORNEY AT LAW, LLC**
4224 CANAL ST.
NEW ORLEANS, LA 70119
P: 504-588-2700
F: 504-708-1717
E: KCB@KENNETHBORDES.COM

**Daniel Werner (GA Bar #422070)**
**Radford & Keebaugh, LLC**
315 W. Ponce de Leon Ave., Suite 1080.
Decatur, GA 30030

P: 678-271-0300
F: 678-271-0304
E: dan@decaturlegal.com
*(pro hac vice motion forthcoming)*

***Attorneys for Plaintiffs***